# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51010

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2018

Lyle W. Cayce
Clerk

OWEN M. SMITH; DANA NORWOOD SMITH,

Plaintiffs–Appellants,

v.

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P.; STEPHEN C. PORTER; G. TOMMY BASTIAN; NDEX TITLE SERVICES, L.L.C.; BANK OF AMERICA, N.A.; FEDERAL NATIONAL MORTGAGE ASSOCIATION; THE REGISTERED HOLDERS OF FANNIE MAE GUARANTEED REMIC PASS-THROUGH CERTIFICATES, Fannie Mae REMIC TRUST 2008-16; FNMA AA MSTR/SUB CW BANK; LAURIE MEDER; FANNIE MAE REMIC TRUST 2008-16,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-193

Before SMITH, WIENER, and WILLETT, Circuit Judges.

PER CURIAM:[*]

The Smiths appeal the district court's denial of their motion to remand their case to state court. They claim the district court lacks subject-matter jurisdiction. We disagree.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51010

**I**

This is the second time this case has come before our court. *See Smith v. Bank of Am. Corp.*, 605 F. App'x 311 (5th Cir. 2015). A brief recap is in order.[1]

In February 2013, the Smiths filed their original petition in Texas state court. Their allegations focused on an attempted non-judicial foreclosure on their property in Austin, Texas. *See id.* at 312. The Defendants were financial institutions and entities involved with processing the foreclosure. "The precise nature of the Smiths' claims was unclear." *See id.* at 312–13.

The Defendants removed the case to federal court.[2] "The Smiths did not move to remand the case to state court." *Id.* at 313. Soon after, the district court granted the Defendants' respective motions to dismiss for failure to state a claim and entered final judgment. The Smiths timely appealed.

Our court declared that the district court failed to assess whether it possessed subject-matter jurisdiction over the Smiths' claims. *See id.* at 312. Accordingly, we vacated the district court's judgment and "remand[ed] the case with instructions to decide the threshold jurisdictional issue." *Id.*

Following our opinion, the Smiths filed a motion to remand their case to state court. The Defendants responded, asserting the district court could exercise federal-question jurisdiction or, in the alternative, diversity jurisdiction.

A magistrate judge concluded that "both diversity jurisdiction and federal-question jurisdiction existed at the time of removal" and recommended

---

[1] Our previous opinion contains a more detailed description of the facts. *See Smith*, 605 F. App'x at 312–13.

[2] In their original motion to remove, the Defendants asserted that the Smiths stated a cause of action for a violation of the Federal Debt Collection Practices Act. The Defendants also asserted that the Smiths' wrongful foreclosure claim was preempted by the Home Owners' Loan Act, giving rise to federal question jurisdiction. They also claimed diversity jurisdiction existed, arguing that any non-diverse Defendants were improperly joined.

No. 16-51010

the district court assert subject-matter jurisdiction over the case.[3] The district court agreed, concluding both federal-question and diversity jurisdiction existed. Accordingly, the court denied the Smiths' motion for remand. The Smiths timely appealed.

## II

Reviewing subject-matter jurisdiction de novo, *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007), we find the Smiths stated a federal cause of action on the face of their original complaint. Thus, the district court properly exercised subject-matter jurisdiction.[4]

Before addressing the jurisdictional issue, we address an argument framing the Smiths' appeal: They ask for leeway in how we interpret their pro se pleadings.[5] It is well-settled that our court holds pro se pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. Unit A Feb. 1981)). And we "liberally construe[] pro se briefs" in the interest of justice. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 628 (5th Cir. 2017) (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir.

---

[3] In his report, the magistrate judge explained that federal question jurisdiction was apparent from the face of the original complaint, the Defendants' Home Owners' Loan Act preemption argument was "superfluous," and diversity jurisdiction existed because "fraudulent joinder was established at the time of removal." The district court agreed with the magistrate judge that the Smiths' "Original Petition clearly allege[d] a violation of federal law on its face."

[4] Given this finding, there is no need to address the Defendants–Appellees' claims regarding diversity jurisdiction (including the claims of improper joinder).

[5] The Smiths filed their original complaint pro se; they are now represented by counsel.

1983) ("[The plaintiff] is a pro se litigant. It is established that his pleadings, therefore, are to be liberally construed.").

Yet, there are limits on how far we will go to assist pro se plaintiffs. These litigants must still satisfy the plausibility pleading standard. *See Taylor*, 296 F.3d at 378 ("[R]egardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" (quoting *S. Christian Leadership Conference v. Supreme Court of La.*, 252 F.3d 781, 786 (5th Cir. 2001))). And pro se litigants "must still brief the arguments in order to preserve them," otherwise, their arguments will be considered waived on appeal. *See Wiggins*, 710 F. App'x at 628 (citing *Yohey*, 985 F.2d at 225). We seek to balance access to justice for pro se litigants with fairness to defendants and the interests of judicial economy. With that in mind, we proceed to the jurisdictional determination.

## A

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[6] To exercise this flavor of jurisdiction, a federal question must "appear[] on the face of the plaintiff's well-pleaded complaint." *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (citing *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)).

This scheme empowers the plaintiff to decide whether her case ends up in federal court. The "plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Elam*, 635 F.3d at 803 (citing *Bernhard*, 523 F.3d at 551). And if she pleads

---

[6] 28 U.S.C. § 1331.

only state-law claims, there is no basis for federal-question jurisdiction. *See id.* (citing *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)).[7]

If a district court can exercise original federal-question jurisdiction over an action, then a federal court may exercise removal jurisdiction over that action. *Id.* (citing 28 U.S.C. § 1441(a)). The complaint establishes the basis for removal. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10–11 (1983). Courts determine whether removal is proper by evaluating "the complaint at the time the petition for removal is filed." *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) (citation omitted); *see also Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014) ("[J]urisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction." (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 569–70 (2004))).

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

**B**

We look to the operative pleading when the Defendants moved for removal: the Smiths' original complaint. The Defendants direct us to specific

---

[7] One exception is the "less frequently encountered[] variety of federal 'arising under' jurisdiction . . . [in which] in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). We do not find that "arising under" jurisdiction is an issue in this case.

portions of the original complaint that, according to them, substantiate their claim that the Smiths alleged[8] a federal cause of action under the federal Fair Debt Collection Practices Act.[9]

In the "Facts" section,[10] the Smiths wrote:

> 17.    In April, 2009 BANK OF AMERICA CORPORATION claimed to be the new mortgage servicer and payments were to be made to them. BANK OF AMERICA CORPORATION was not an "original party" to the "original negotiable instrument" which the "borrowers" negotiated. BANK OF AMERICA CORPORATION was a 3rd party debt collector, pretending to be the Lender. BANK OF AMERICA CORPORATION failed to adhere to the Fair Debt Collection Practice Act, as all 3rd party debt collectors are required to do.

In the next paragraph, after describing the conduct of Countrywide Financial Corporation—which later merged with Bank of America—they wrote: "The Supreme Court has warned people in **Federal Crop Insurance Corp vs. Merrill** and **Title 15 Section 1692** that when people enter into any dealings with agents, the people better investigate the authority and limits of authority that the agents possess." The Smiths repeat this language in other paragraphs that describe the conduct of other Defendants, such as Barrett Daffin, MERS, BAC Home Loans Servicing, Bastian, NDEX Title Services, and Porter. The Smiths believe the conduct amounts to "a foreclosure mill style shell game preying on Texans by intimidation and lawyering."

In the "Conclusion" section, the Smiths stated: "When the Court takes into account the Statutes and Case Law and applies them to the facts of this

---

[8] Of course, the Defendants do not claim these allegations state a *plausible* claim to relief. We do not address the plausibility of the allegations.

[9] 15 U.S.C. § 1692 *et seq.*

[10] The Smiths' original complaint does not neatly lay out their allegations. There is no section in which the Smiths consolidate the various claims they may have against the Defendants, nor is there a section listing the various counts. Instead, the Smiths sprinkle facts and legal authority throughout the complaint.

case . . . it is clear why it is necessary for agency authorization from the principal [to] be proved by any mortgage servicer, lawyer, employee or assignee. No such evidence exists." And the Smiths criticized the "action by 3rd parties . . . [that] has rendered the security instrument a nullity, leaving only an unsecured indebtedness of the negotiable instrument that could only be enforced by the original Creditor through legal avenues."

Finally, in the "Prayer for Relief" section, the plaintiffs repeated their description of the Defendants' activities as a "type of predatory enterprise which involves fraud and relentless lawyering on unsuspecting Texans." This section did not allege a specific cause of action. Instead, after requesting "a hearing," "discovery," and an injunction to prevent foreclosure on the Smiths' property, the Smiths issued a broad prayer for monetary relief. Their prayer included, among other requests:

- "Damages in an amount not to exceed the jurisdictional limits of this Court";
- "Economic Damages";
- "Additional Treble Damages for all intentional and knowing violations"; and
- "All other relief to which [the Smiths] are entitled."

We find that it is apparent from the face of the complaint that the Smiths alleged a federal-law cause of action: a claim for relief under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692. The Smiths alleged that Bank of America, a Defendant, "failed to adhere to the Fair Debt Collection Practice Act, as all 3rd party debt collectors are required to do." This may be read as an attempt to invoke a federal statute.[11]

---

[11] Indeed, our jurisprudence regarding pro se pleadings gives us reason to liberally construe the Smiths' complaint in favor of finding they had stated a claim under the federal Fair Debt Collection Practices Act. *See Wiggins*, 710 F. App'x at 628.

In response, the Smiths claim they intended to invoke only "the Texas Debt Collection Act." We agree that they alleged a violation of Texas law by asserting[12] "[a]ll Defendants. . . carried out a collection action by way of the foreclosure and Substitute Trustee's Non-Judicial Foreclosure Sale in violation of the Texas Finance Code sections 392.301(8) and 392.304 and other various State laws."

But we do not agree that this reference to the Texas Finance Code demonstrates the Smiths did not *also* allege a free-standing federal Fair Debt Collection Practices Act claim.

After asserting that Bank of America "was a 3rd party debt collector" that "failed to adhere to the Fair Debt Collection Practice Act, as all 3rd party debt collectors are required to do," the Smiths explicitly referenced "**Title 15 Section 1692**" when discussing the Supreme Court's warning that "when people enter into any dealings with agents, the people better investigate the authority and limits of authority that the agents possess." And 15 U.S.C. § 1692 *et seq.* is known as the "Fair Debt Collection Practices Act." *See, e.g.*, *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1410 (2017) ("The Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. § 1692 et seq., prohibits a debt collector from asserting any 'false, deceptive, or misleading representation,' or using any 'unfair or unconscionable means' to collect, or attempt to collect, a debt, §§ 1692e, 1692f."). The Smiths invoked the federal statute—by name and by number—and alleged conduct that may violate that act.

It bears emphasizing that factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon

---

[12] Notably, the Smiths did not refer to the Texas law by its colloquial name.

which the plaintiff seeks relief.[13] We find such guidance in the Supreme Court's decision in *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). According to the Court, "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' FED. RULE CIV. PROC. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 346. A plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Id.* at 347. Plaintiffs may accomplish this by "stat[ing] simply, concisely, and directly events that, they allege[], entitle[] them to damages." *Id.* As long as such pleadings inform defendants of the complaint's factual basis, plaintiffs need "do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.* (citations omitted). Thus, plaintiffs may state a claim for relief by pleading facts that support the claim.

The Smiths did just that—and cited the legal theory underlying their claim. The Smiths' *explicit* reference to the "Fair Debt Collection Practice[s] Act" (and its position in the U.S. Code), coupled with a description of conduct that could subject the Defendants to liability under the Act, solidifies our conclusion.

Consequently, a district court could assert original jurisdiction over the complaint on the basis of 28 U.S.C. § 1331. And removal jurisdiction is proper under 28 U.S.C. § 1441(a). No ambiguity in the complaint gives us reason to construe the removal statute narrowly.

---

[13] Our Court previously recommended the district court consider "whether federal question jurisdiction" may exist because "[i]n the 'facts' section of their original pro se complaint, for instance, the Smiths alleged that Bank of America was a 'third party debt collector' that failed to adhere to the Fair Debt Collection Practices Act (e.g., by failing to provide documentation that the bank was the current mortgage servicer)." *Smith*, 605 F. App'x at 315 n.5.

No. 16-51010

**C**

The Smiths offer two additional arguments for why we should find they pleaded only state-law claims: (1) their federal claim is time-barred; and (2) they requested treble damages, which the Texas Fair Debt Collection Practices Act provides for, but the federal Act does not. We are not persuaded by either argument.

The first argument misunderstands federal jurisdiction. If a complaint is time-barred, that speaks to the plaintiffs' ability to prevail in the suit—not our ability to assert jurisdiction. Indeed, federal courts routinely assert jurisdiction over time-barred claims. *See, e.g.*, *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 945–47 (5th Cir. 2014) (affirming that the plaintiff's federal-law claims were "barred by the applicable statutes of limitations" after the defendant removed the case to federal court on the basis of federal-question jurisdiction); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 390 (5th Cir. 1998) ("[W]e do indeed have jurisdiction under the Federal Officer Removal Statute, and . . . we therefore may reach the merits of this appeal. In so doing, we affirm the judgment of the district court dismissing the complaint as barred by the Texas statute of limitations.").

Turning to the second argument, the Smiths did request treble damages—but that does not mean they alleged only a state-law claim.[14] The Smiths believe that only a violation of the Texas Fair Debt Collection Practices Act provides for treble damages. They are incorrect. The Texas Fair Debt Collection Practices Act does not *itself* permit treble damages. *See* Tex. Fin. Code § 392.403 (1997). Treble damages result from a related statute: An intentional and knowing violation of the Texas Fair Debt Collection Practices

---

[14] Specifically, the Smiths requested "Additional Treble Damages for all intentional and knowing violations."

No. 16-51010

Act "is a *per se* violation of the Texas Deceptive Trade Practices Act (DTPA) (Tex. [Fin. Code] § 392.404), which allows treble damages for knowing and intentional violations." HON. JAMES J. BROWN, JUDGMENT ENFORCEMENT § 14.01 (3d ed. 2018). And a knowing and intentional violation of the *federal* Fair Debt Collection Practices Act is also a violation of Texas's DTPA— meaning a plaintiff could seek treble damages under Texas law for an intentional violation of the federal Act. *Id.* Thus, the Smiths' reference to "Treble Damages" does not convince us that they stated only a state-law claim.

Also, the Smiths did not only request treble damages; they also requested "Economic Damages." The federal Fair Debt Collection Practices Act allows plaintiffs to collect economic damages from malicious debt collectors. *See* 15 U.S.C. § 1692k (2011). Thus, requesting "Economic Damages" is consistent with raising a federal claim.

### III

The Smiths give us no reason to believe they did not plead both state- and federal-law claims. They cite no case in which our court—or any court— found federal-question jurisdiction absent when a fair reading of a pro se plaintiff's complaint included an explicit allegation that the defendant violated a federal statute. Because we find the Smiths stated a federal cause of action on the face of their original complaint, we conclude the district court could exercise subject-matter jurisdiction. We AFFIRM the district court's decision to deny the Smiths' motion to remand the case to state court.